## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FELIX DEJESUS,
     Petitioner,

     v.

UNITED STATES OF AMERICA,
     Respondent.

No. 3:11cv1355 (SRU)

### RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Felix DeJesus, appearing *pro se*, has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. DeJesus is confined at Federal Correctional Institution Fort Dix in Fort Dix, New Jersey, having been convicted by a jury and originally sentenced to 360 months in prison for conspiracy to possess with intent to distribute more than 1,000 grams of heroin and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846. *See* Judgment, *United States v. DeJesus*, 3:00-cr-227 (SRU) (doc. # 1089). DeJesus appealed both his conviction and his sentence. On November 29, 2005, the Second Circuit affirmed the conviction, but remanded the matter for proceedings pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). *United States v. DeJesus*, 160 F. App'x 15 (2d Cir. 2005). DeJesus petitioned to the Supreme Court, which denied certiorari on March 27, 2006. *DeJesus v. United States*, 547 U.S. 1048 (2006).

Upon remand, I determined that I would not have sentenced DeJesus to a different sentence had the Sentencing Guidelines been advisory at the time of his initial sentence, and on July 11, 2006, I declined to resentence him. In order to remedy an administrative error, I issued a second ruling declining to resentence DeJesus on April 30, 2007. DeJesus appealed again on May 4, 2007. The Second Circuit again remanded the case for resentencing on July 1, 2008, this time pursuant to *United States v. Regalado*, 518 F.3d 143 (2d Cir. 2008), and to consider DeJesus's claim that he had been inappropriately sentenced to a term of imprisonment 20 months

longer than that imposed on his brother.  *United States v. Rosario*, 280 F. App'x 78 (2d Cir. 2008).

On June 26, 2009, I held a resentencing hearing at which I reduced DeJesus's term of incarceration by 60 months to 300 months' imprisonment.  DeJesus appealed a third time, and on September 24, 2010, the Second Circuit affirmed the sentence, holding that it was both procedurally and substantively reasonable.  *United States v. DeJesus*, 393 F. App'x 829 (2d Cir. 2010).  Less than a year later, on August 22, 2011, DeJesus filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

DeJesus raises his claims for relief based upon ineffective assistance of counsel.  DeJesus requests that the court vacate and set aside his sentence for resentencing or grant an evidentiary hearing.

## I.  Background

DeJesus was a trusted lieutenant of drug dealer Frank Estrada and a high-ranking member of Estrada's large-scale heroin and crack cocaine distribution organization in Bridgeport, Connecticut.  DeJesus was convicted of possession with intent to distribute 1,000 grams or more of heroin and 50 grams or more of cocaine base on April 2, 2002, after a month-long jury trial.

At DeJesus's sentencing on September 4, 2002, I determined that DeJesus was responsible for a drug quantity that placed him in Guidelines base offense level 38.  Two levels were added for use of a firearm, three levels for his management role, and two levels were added for use of a minor, bringing his total offense level to 45, which was automatically adjusted down to 43.  DeJesus moved for a downward departure on the ground of extraordinary rehabilitation, for which a one-level departure was granted, bringing his offense level to 42.  Tr. of Sentencing at 65-66, *United States v. DeJesus*, No. 3:00-cr-227 (D. Conn. Sep. 4, 2002).  I adopted the Presentence Report ("PSR") calculation of DeJesus's criminal history category as V, based on

ten criminal history points for, among other things, four prior misdemeanor assault convictions and a conviction for threatening. I adjusted DeJesus's criminal history points to eight and departed downward to category III, on the ground that his criminal history category significantly overstated the seriousness of his past criminal conduct. *Id.* at 31. Initially, I sentenced DeJesus to 360 months' imprisonment on each count, to be served concurrently, to be followed by a ten-year term of supervised release. Judgment, *United States v. DeJesus*, 3:00-cr-227 (SRU), (doc. # 1089). On remand, I lowered his sentence to 300 months' imprisonment and a five-year term of supervised release. Am. Judgment, *Id.*, (doc. # 1655).

## II.    Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

Section 2255 provides that,

[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255(b). A district court has "wide discretion in developing the record it will use to determine a habeas petition," however, "that discretion does not extend to summary dismissals of petitions presenting facially valid claims and off-the-record interactions with trial counsel." *Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003).

A petitioner may raise a claim of ineffective assistance of counsel even if that claim was not raised previously at trial or on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed, the petitioner must demonstrate (1) that his counsel's performance "fell below an

- 3 -

objective standard of reasonableness," and (2) "that the deficient performance prejudiced the

defense." *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984).  The mere possibility that a

particular deficiency might have prejudiced the defendant is not enough.  Rather, "[t]he

defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceedings would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In addition, "[a]

court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id.* at 689.

The *Strickland* standard also applies to ineffective assistance claims directed at appellate

counsel. *See Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir. 1990).  Moreover, a claim

alleging ineffective assistance of appellate counsel on the basis of counsel's omission of an issue

will fail unless the petitioner can show "that counsel omitted significant and obvious issues while

pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528,

533 (2d Cir. 1994).

## III.   Discussion

### A.   Failure to Challenge Drug Quantity

DeJesus first claims that his trial counsel was ineffective for failing to challenge the

quantity of narcotics attributed to him.  He argues that prior to sentencing there was a status

conference for the purpose of scheduling an evidentiary hearing to resolve the issue of drug

quantity.  At the status conference, DeJesus's counsel, Attorney Dan LaBelle, stated that he did

not want to have a hearing on the matter.  Pet.'s Mem., at 7-8.  LaBelle did submit a written

objection to the drug quantity, although DeJesus argues that LaBelle did not challenge the

calculations set forth in the Government's memorandum in aid of sentencing.  *Id.* at 8.  DeJesus

argues that his counsel failed to "review the record of the drugs" and that LaBelle "did not know

any legal approach in how to attack the drug quantities." *Id.* at 9.

DeJesus indicates that the PSR attributed 30 kilograms of heroin and 1.5 kilograms of cocaine base to DeJesus's involvement in the conspiracy. *Id.* at 2. At sentencing, LaBelle requested that I make a finding regarding drug quantity. Transcript of Sentencing at 16, *United States v. DeJesus*, No. 3:00-cr-227 (SRU) (D. Conn. Sep. 4, 2002). I expressed surprise at this request, stating,

> Let me clarify what precisely you want. I was concerned to read that objection because we had a status conference in this case a couple months ago with all counsel present for the purpose of scheduling an evidentiary hearing to determine the quantity with respect to various defendants, and uniformly defense counsel indicated they did not want to have a hearing on quantity, to my surprise, I will admit. And so it's not clear to me what you want me to do. Do you want me to hold a hearing on this point and make a specific determination about your client? Do you want me to review the accuracy of the calculations set forth in the government's memorandum in aid of sentencing?

*Id.* When counsel confirmed his wish that I make a finding on the record, I said, "I haven't heard any argument or evidence that would undercut the quantity statement in the PSR and that's what I'm trying to figure out." *Id.* at 17. LaBelle then replied, "I have not heard anything, Your Honor." *Id.* There was no evidence to dispute the testimony regarding drug quantity that I heard at trial, which was consistent with the PSR's calculation of drug quantities, and, therefore, I adopted the PSR's factual statements as findings of fact. *Id.* at 66.

In order for a petitioner to succeed on an ineffective assistance of counsel claim, the petitioner must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. at 687-91. If the petitioner fails to satisfy one prong, the court need not consider the other. *Id.* at 697.

This claim fails on the prejudice prong. DeJesus was part of a huge drug trafficking

organization and was a close lieutenant of Frank Estrada.  DeJesus's drug quantity determination was based upon the amount of drugs foreseeably distributed by the conspiracy, the length of his participation in the organization, and the types of transactions that he engaged in.  At trial, the government presented the testimony of cooperating witnesses, including Frank Estrada himself. That evidence indicated that DeJesus traveled to Miami with Estrada carrying large quantities of U.S. currency, that during his lengthy involvement in the conspiracy, DeJesus passed out distribution quantities of drugs to street-level dealers, collected money from drug sales on a regular basis, and stood as an armed supervisor at bagging sessions where kilogram quantities of heroin were packaged for street-level sales.  DeJesus points to no information, evidence, or witness that LaBelle should have used to contest the drug quantity attributed to him.

Furthermore, in order to obtain a lower Guidelines imprisonment range, DeJesus would have had to prove that the drug quantity attributed to him was less than 10 kilograms of heroin and 500 grams of cocaine base.  At sentencing, DeJesus's offense level, increased by enhancements for use of a minor, possession of firearms, and management role, reached 45, which was automatically adjusted downward to the maximum offense level of 43.  Had LaBelle successfully argued that DeJesus was responsible for less than the 30 kilograms of heroin and 1.5 kilograms of cocaine base, as DeJesus states he should have, his base offense level would have been 36.  U.S. Sentencing Guidelines Manual § 2D1.1(a)(3)(c) (2002).  At level 36, with a two-level enhancement of use of a minor, a two-level enhancement for possession of firearms, and a three-level enhancement for management role, DeJesus's total offense level would have been 43 still, before the downward departure to 42 for extraordinary rehabilitation.  His Guidelines range, therefore, would not have been altered.  In order for DeJesus to have obtained an offense level lower than 43, he would have had to have started with a base offense level of 34, which means

the drug quantity attributable to him would have to be "at least 3 KG but less than 10 KG of heroin" or "at least 150 G but less than 500 G of cocaine base."[1]  *Id.*

There is no question that the government presented sufficient evidence to show that the amount of drugs foreseeable and attributable to DeJesus was greater than 10 kilograms of heroin and 500 grams of cocaine base.  Throughout the Estrada gang trials, a great deal of evidence was presented pertaining to the amount of drugs that could be attributed to the entire conspiracy, as well as to DeJesus individually.  Processing heroin for street-level distribution was known as a "session" or "bagging session."  Sessions were held one to two times per week and typically involved anywhere between ten and twenty people.  Trial Tr. at 220, *United States v. Herredia*, *et. al*, No. 3:00-cr-227 (SRU) (D. Conn. Nov. 14, 2001).  Those sessions were normally supervised by lieutenants in the organization such as Felix DeJesus, Michael Hilliard, Ricardo Rosario, Isaias Soler, and others.  At trial, co-conspirator Nelson Carrasquillo testified that, at least as early as 1999, each weekly session resulted in the preparation of at least 206 bricks of heroin for street level distribution, or approximately one kilogram (1,000 grams) of heroin.  Trial Tr. at 62, 72, *United States v. Herredia, et. al*, No. 3:00-cr-227 (SRU) (D. Conn. Nov. 26, 2001).

The evidence presented at trial showed that the conspiracy was responsible for well in excess of 30 kilograms of heroin and 1.5 kilograms of crack cocaine.  Co-conspirator Jermaine Jenkins testified that, during the course of his participation in the organization, "kilos and kilos and kilos of crack cocaine [and] . . . kilos and kilos and kilos of heroin" and "tens of thousands of dollars, hundreds of thousands of dollars" . . . and "more than a million dollars" passed

---

[1] Furthermore, in order to receive a Guidelines imprisonment range lower than the sentence he ultimately received following remand, DeJesus would have had to have started at a base offense level of 30, which would have required his counsel to show that the drug quantity foreseeable and attributable to DeJesus was "at least 700 G but less than 1 KG of Heroin" or "at least 35 G but less than 50 G of Cocaine Base."  U.S. Sentencing Guidelines Manual § 2D1.1(a)(3)(c)(5).  The government presented evidence to show that a much larger drug quantity was foreseeable and attributable to DeJesus.  *See infra*.

through his hands alone.  Trial Tr. at 167, *United States v. Herredia, et. al*, No. 3:00-cr-227 (SRU) (D. Conn. Nov. 20, 2001).  Co-conspirator Jose Lugo's testimony also indicates that from sixteen to eighteen ounces of heroin were bagged per week.  Trial Tr. at 229, *United States v. Herredia, et. al*. No. 3:00-cr-227 (SRU) (D. Conn. Nov. 14, 2001).  An ounce is equal to 28.35 grams and sixteen ounces (one pound) is equal to 453.6 grams.  Therefore, even using that conservative estimate, the Estrada drug operation conspired to distribute and did distribute approximately 23,587 grams or roughly 23.6 kilograms of heroin in just one year.  Gov.'s Omn. Sent. Mem., at 22.  The conspiracy took place in Bridgeport from the time when Frank Estrada was released from prison in 1995 to when he was arrested in 2000, and DeJesus was involved for several of those years.  Thus, the drug quantity reasonably foreseeable to DeJesus easily exceeds 30 kilograms of heroin.

Felix DeJesus was also involved in the crack operation of Estrada's organization.  In 1998, when co-conspirator Jermaine Jenkins was unable to sell the crack cocaine that Estrada gave him to sell in the P.T. Barnum housing project, DeJesus, among others, was instructed to flood the market with kilograms of cheap crack cocaine.  Trial Tr. at 47, *United States v. Herredia, et. al*, No. 3:00-cr-227 (SRU) (D. Conn. Nov. 20, 2001).  The evidence at trial indicated that the co-conspirators were distributing kilogram quantities of crack cocaine per week.  Jenkins testified that "[Estrada] went ahead and the rest of the kilos of the coke that he had, he went out and bag them, cook them up and bagged them up hisself and had them distribute out there."  *Id.* at 46.

Even had DeJesus's attorney somehow been successful in arguing that the drug quantity attributable to DeJesus should be less than 30 kilograms of heroin and 1.5 kilograms of cocaine base, an unlikely prospect in itself, that success would not have resulted in an offense level lower

than 43. DeJesus would not have been able to contradict a finding that he was responsible for more than 10 kilograms of heroin and 1.5 kilograms of cocaine base. Therefore, DeJesus cannot meet the prejudice prong of his ineffective assistance of counsel claim.

> B.    Failure to Argue *Apprendi* Violation

DeJesus also argues that his counsel was ineffective for failing to properly investigate and pursue a claim under *Apprendi*. He argues that only the jury, not the court, can make drug quantity findings, even if the court's findings did not expose the defendant to a sentence beyond the otherwise applicable statutory maximum sentence. Pet.'s Mem., at 18. He also contends that "we cannot conclude, as the government may argue, that *Apprendi* and its progeny apply only to prosecutions that actually result in sentences exceeding otherwise applicable maximums." *Id.* at 22.

In *Apprendi v. New Jersey*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Following *Apprendi*, the Second Circuit clarified that, "it is error for a court to 'enhance' a defendant's sentence above a statutory maximum based on drug quantity if the Government has not charged drug quantity in the indictment and proved it to a jury beyond a reasonable doubt." *United States v. Thomas*, 274 F.3d 655, 663 (2d Cir. 2001) (en banc).

Here, the superseding indictment charged drug quantities that triggered a statutory maximum of life in prison, and the jury found those quantities. Therefore, DeJesus faced a statutory maximum of life imprisonment as the result of jury determinations, not findings made by the court. The Sentencing Guidelines calculations underlying DeJesus's original sentence of 360 months' imprisonment did not increase the maximum sentence. It is well settled that district

courts are "empowered" to determine drug quantities and that only those facts "necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Mejia*, 324 F. App'x 51, 52-53 (2d Cir. 2009), *citing United States v. Booker*, 543 U.S. 220, 244 (2005).  There was no *Apprendi* violation because the sentence imposed was not more than the statutory maximum prescribed by the statute based on the jury's verdict. DeJesus's counsel, therefore, cannot have been ineffective for failing to pursue an *Apprendi* challenge to the drug quantity findings.  "The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a defendant is] entitled."  *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (internal quotation marks omitted). Rather, counsel effectively argued for a downward departure based upon extraordinary rehabilitation efforts by DeJesus, which resulted in the court's sentence of 360 months' imprisonment.  On remand, again, counsel pursued other arguments that lowered DeJesus's sentence from 360 months' imprisonment to 300 months' imprisonment.  DeJesus's counsel did not perform below an objective standard of reasonableness nor has DeJesus suffered any prejudice as a result of the counsel's representation.

For the reasons stated above, LaBelle cannot be said to have been ineffective on appeal. A claim alleging ineffective assistance of appellate counsel on the basis of counsel's omission of an issue will fail unless the petitioner can show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  Because the *Apprendi* argument would have been sure to fail, it cannot be said that LaBelle was ineffective for pursuing other, stronger arguments on appeal.

**IV.   Conclusion**

For the foregoing reasons, DeJesus's section 2255 motion to vacate, set aside, or correct

his sentence is **DENIED**.  The motion, files, and records of this case are extensive and conclusively show that DeJesus is entitled to no relief; therefore, it is not necessary to hold an evidentiary hearing.  28 U.S.C. § 2255(b).  A certificate of appealability will not issue because DeJesus has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  DeJesus has not demonstrated that "'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).  The clerk shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 9th day of July 2013.


/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge